UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

DeMARIO JAMES DRUMMOND,                          Civil No. 05-212 (DSD/AJB)

            Petitioner,

     v.                                          **REPORT AND RECOMMENDATION**

STATE OF MINNESOTA,

            Respondent.

_____

     DeMario James Drummond, Minnesota Correctional Facility - Stillwater, 970 Pickett Street North, Bayport, Minnesota, 55003, Petitioner, pro se.

     Mark Nathan Lystig, Assistant Ramsey County Attorney, 50 West Kellogg Boulevard, Suite 315, St. Paul, Minnesota, 55102, for Respondent.

            _____

ARTHUR J. BOYLAN, United States Magistrate Judge

     This matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1.)  Petitioner is challenging his 2001 conviction in the state district court for Ramsey County, Minnesota, for attempted first-degree murder, second degree assault, and drive-by shooting.  Respondent has filed an answer to the petition, (Docket Nos. 7-8), contending that Petitioner is not entitled to a writ of habeas corpus, and Petitioner has filed a reply memorandum, (Docket No. 11), in support of his petition.

     The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that Petitioner's application for a writ of habeas corpus be denied, and that this action be dismissed with prejudice.

## I. BACKGROUND

At approximately 11:00 p.m. on May 15, 2001, a man named Zachary Kloeppel was struck by a bullet while he was standing on a sidewalk in downtown St. Paul, Minnesota. Kloeppel and other nearby witnesses saw that the bullet had been fired from the driver's side of a passing car. Although several shots were fired, only one bullet struck Kloeppel, and he was not seriously injured.

At the time of the shooting, two St. Paul police officers happened to be in their squad car very close to the scene. After hearing the gunfire, the officers observed smoke in the air, and saw a car speeding away. The police turned on their flashing lights and siren and pursued the car, losing sight of it only briefly, (according to one of the officers, for "[j]ust a couple seconds"[1]), as it went around a corner. The chase ended after only a few blocks when the fleeing car pulled over to the side of the street.

The police officers found two people in the car – Petitioner and his four-year-old daughter. One of the officers apprehended Petitioner, and the other officer talked to the daughter. The little girl told the officer that her father, (Petitioner), had a gun, and that he threw it out the window. Shortly thereafter, a revolver was found along the route of the police chase.

After Petitioner was apprehended, he made statements to the police which suggested that he believed Kloeppel, (the shooting victim), had assaulted one of his relatives several years earlier. The police inferred from Petitioner's comment that he had shot Kloeppel as an act of revenge. Petitioner was later charged with attempted first

---

[1] Trial transcript, [Docket No. 8], p. 268.

degree murder and other offenses in connection with the shooting.

When Petitioner's criminal case came to trial, the prosecution sought to introduce evidence showing that he had previously been convicted of another crime several years earlier.  Such evidence of a prior conviction, which is referred to as "Spreigl evidence" in Minnesota state law parlance, can be admitted in state criminal cases under certain circumstances prescribed by the Minnesota's Rules of Evidence,[2] and concomitant state case law that originated in the seminal decision of State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167 (1965).  The prior conviction that the prosecution sought to present to the jury in Petitioner's case resulted from a 1996 shooting incident, in which Petitioner was the perpetrator and Kloeppel was the victim.  Applying Minnesota law, the trial court judge ruled that evidence of the prior shooting incident could be presented to the jury.

The trial court judge also allowed the police officers to tell the jury about the incriminating statements made by Petitioner's daughter at the time of his apprehension. Although the daughter was declared incompetent to testify in person, her statements to the police – i.e., "Daddy had a gun" and "Daddy threw the gun out the window"[3] – were admitted under the "excited utterance" exception to the hearsay rule prescribed by the Minnesota Rules of Evidence.  (See Minn. R. Evid. 803(2).)

---

[2]  Rule 404(b) provides that:

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith.  It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  In a criminal prosecution, such evidence shall not be admitted unless the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence."

[3]  Trial Transcript, p. 146.

Petitioner has acknowledged, (at least implicitly), that Kloeppel was shot by a gun fired from his car.  According to Petitioner, someone else, identified only as "Pops," fired the gun, and then jumped out of the car before the police stopped his car and apprehended him.  However, during a police interview shortly after the shooting, Petitioner neglected to mention that someone else supposedly had been in the car with him and his daughter at the time of the shooting.[4]

The jury rejected Petitioner's defense and found him guilty of attempted first-degree murder, second degree assault, and drive-by shooting.  Petitioner was sentenced to 230 months in prison, and he is presently serving his sentence at the Minnesota Correctional Facility at Stillwater.

Following his conviction and sentence, Petitioner filed a direct appeal with the Minnesota Court of Appeals.  Petitioner's appellate counsel filed a brief that presented two arguments: (1) the Spreigl evidence pertaining to the prior shooting incident should not have been presented to the jury, because the conditions for admitting such evidence, as prescribed by Minnesota law, were not satisfied in this case; and (2) the incriminating statements made by Petitioner's daughter to the police should have been excluded under the hearsay restrictions prescribed by the Minnesota Rules of Evidence.  Petitioner himself filed a separate two-page "Pro Se Supplemental Brief," in which he attempted to present some additional arguments.  The last sentence of Petitioner's pro se brief reads as follows:

> "I would also like the instant court to properly consider any and all other grounds of defense entitled to me relating to either the United States Constitution or the Minnesota State Constitution which may appear from any proceeding in the instant case even though either not now known or raised

---

[4] Trial transcript, p. 192.

at this time including but not limited to; my right to have been free from judicial bias, vindictive prosecutions and any attorney-client conflicts either now known or discovered at later date, my right not to be twice charged for any crime, my right to fully face my accusers including all rights to confrontation clauses, my right to be tried by an unbiased tribunal, my right to both the effective assistance of counsel and counsel of choice, my right to testify on my own behalf in leu of my own defense, my right not to have had any statements either illegally obtained or used against me in any court of law, and most importantly my right not to have any evidence used twice against me to obtain any conviction placing me in double jeopardy."[5]

The Minnesota Court of Appeals rejected all of Petitioner's claims on the merits, and affirmed his conviction on direct appeal. State v. Drummond, No. C1-01-1950 (Minn.App. 2002), 2002 WL 1902929 (unpublished opinion), ["Drummond I"]. Petitioner then sought further review in the Minnesota Supreme Court. His appellate counsel filed a brief claiming that the Spreigl evidence, (i.e., the evidence of Petitioner's prior conviction), was not admissible under Minnesota law. Petitioner also filed his own "Pro Se Petition For Review Of Decision Of Court of Appeals," in which he reiterated the Spreigl evidence claim, and also argued that his daughter's statements to the police should not have been admitted under the "excited utterance" exception to Minnesota's hearsay rule. No federal constitutional claim was presented to the Minnesota Supreme Court in either appellate counsel's brief, or in Petitioner's own pro se brief.[6] The Minnesota Supreme Court summarily denied Petitioner's application for further review on direct appeal, on October 29, 2002.

---

[5]    Respondent's Appendix to Answer, (Docket No. 8), "Appellant's Pro Se Supplemental Brief," at p. 2.

[6]    The briefs to the Minnesota Supreme Court on Petitioner's direct appeal are included in the record at Docket No. 14.

On September 22, 2003, Petitioner filed a pro se motion in the trial court, seeking post-conviction relief under Minn.Stat. §§ 590.01 et seq. Petitioner's post-conviction motion raised the following claims: (1) that Petitioner was deprived of his constitutional right to due process because of prosecutorial misconduct; (2) that the <u>Spreigl</u> evidence regarding his prior conviction should not have been admitted, because the conditions for admitting such evidence, as prescribed by Minnesota law, were not met; (3) that Petitioner received ineffective assistance of counsel at trial, because his attorneys failed to show that the conditions for admitting the <u>Spreigl</u> evidence had (allegedly) not been met; (4) that Petitioner received ineffective assistance of counsel on appeal, because his appellate counsel did not raise a claim of ineffective assistance of trial counsel, based on the aforementioned error allegedly committed by his trial attorneys; and (5) that the admission of Petitioner's daughter's statements violated his constitutional rights under the "confrontation clause" of the federal Constitution.[7]

The trial court summarily denied Petitioner's post-conviction motion, without reaching the merits of any of his claims for relief, because all of Petitioner's claims were predicated on matters that had been, or could have been, raised and decided on Petitioner's direct appeal. Petitioner appealed that ruling to the Minnesota Court of Appeals. The Court of Appeals held that Petitioner's three primary claims, i.e., the claims other than ineffective assistance of counsel, would not be considered for the reason cited by the trial court – namely because those claims were, or could have been, litigated and adjudicated on direct appeal. The appellate court denied Petitioner's claim of ineffective assistance of trial

---

[7] Respondent's Appendix to Answer, (Docket No. 8), "Petition For Post-Conviction Relief," at p. 1.

counsel, because that claim also could have been raised and resolved on direct appeal, (and, in any event, Petitioner was claiming that his trial attorneys should have raised certain arguments that had already been decided against him on his direct appeal). Finally, the Court of Appeals rejected Petitioner's claim of ineffective assistance of appellate counsel, because that claim was based solely on the unsustainable premise that Petitioner had received ineffective assistance of counsel at trial. Thus, the denial of Petitioner's state post-conviction motion was upheld on appeal. Drummond v. State of Minnesota, no. A04-230 (Minn.App. 2004), 2004 WL 2221573 (unpublished opinion), rev. denied, December 22, 2004, ["Drummond II"].

Petitioner is now seeking federal habeas corpus review of his conviction. The present petition lists four grounds for relief:

(1) Petitioner was denied effective assistance of counsel at trial and on appeal, because (a) his trial counsel did not adequately argue that the Spreigl evidence was inadmissible under Minnesota law, and (b) his appellate counsel did not point out the alleged mistake by his trial counsel.

(2) Petitioner was deprived of his constitutional rights under the Confrontation Clause, because the trial court improperly admitted his daughter's hearsay statements.

(3) Petitioner was deprived of his constitutional right to due process, because the prosecution "deliberately misrepresented the facts" pertaining to the Spreigl evidence.

(4) The trial court erred by allowing the prosecution to present the Spreigl evidence at Petitioner's trial.

(Petition, [Docket No. 1], pp. (5)-(6), ¶ 12.)

For the reasons discussed below, this Court finds that all of Petitioner's claims, except for his claim of ineffective assistance of appellate counsel, must be summarily denied based on the federal doctrine of procedural default.   Petitioner's ineffective assistance of appellate counsel claim must be denied on the merits.

## II.  LEGAL PRINCIPLES GOVERNING FEDERAL HABEAS CORPUS REVIEW

28 U.S.C. § 2254(d), which was enacted as part of the Anti-terrorism and Effective Death Penalty Act, ("AEDPA"), prescribes the standard of review for federal habeas corpus proceedings.

> "In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions.  28 U.S.C. § 2254; Williams v. Taylor, 529 U.S. 362, 402-13,... (2000). Accordingly, 'habeas relief 'shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless' the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.''"

Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir.), cert. denied, 543 U.S. 1027 (2004), quoting Robinson v. Crist, 278 F.3d 862, 865 (8th Cir.2002) (quoting 28 U.S.C. § 2254(d)).

Federal habeas review of state court judgments is available only for federal constitutional issues.  The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."   Estelle v. McGuire, 502 U.S. 62, 67 (1991).  See also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

It is also well-established that a state prisoner cannot raise any federal constitutional claim for the first time in a federal habeas corpus petition.  A federal constitutional claim is reviewable in a federal habeas corpus proceeding only if that claim has already been fairly presented to, and decided on the merits by, the highest available state court.   This requirement has been explained by the United States Supreme Court as follows:

> "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'... [Citations omitted.]  To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. [Citations omitted]."

Baldwin v. Reese, 541 U.S. 27, 29 (2004).  See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

It is not necessary for a federal habeas petitioner to have spelled out every nuance of his constitutional claims to the state courts, but he does have to give the state courts fair notice that there is indeed a federal constitutional dimension to his claims.  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."   Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).

"Even if state law 'bears some relation to' federal constitutional requirements, 'habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct [state court] appeal to preserve federal review.'"  Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996), quoting Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994), cert. denied, 513 U.S. 1195 (1995).  See also McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("[m]ere similarity between the state claims and the federal  habeas claims is insufficient").  Therefore, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  Duncan, 513 U.S. at 366.

When a state appellate court has expressly declined to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim is considered to be "procedurally defaulted" for federal habeas corpus purposes.  As the Eighth Circuit Court of Appeals explained in Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule."  See also McCall, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) (same).

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).   The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"   Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) (emphasis added).  In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively demonstrates that he must truly be innocent of the crime for which he was convicted.[8]

---

[8]  As explained by our Court of Appeals --

"The actual innocence exception is concerned with claims of actual, not legal innocence.  Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994).  It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception.  Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996).  For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

The rules governing procedural default have been summarized by the United States Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman, 501 U.S. at 750.

## III.  PETITIONER'S PROCEDURALLY DEFAULTED CLAIMS

In this case, Petitioner is seeking federal habeas corpus review of five federal constitutional claims – (1) he was deprived of his constitutional right to due process, because of the admission of the Spreigl evidence pertaining to his prior conviction, (2) he was deprived of his constitutional right to confront his accusers, because of the admission of his daughter's hearsay statements, (3) he was deprived of his constitutional right to due process, because the prosecution allegedly "misrepresented the facts" pertaining to the Spreigl evidence, (4) he was deprived of his constitutional right to effective assistance of counsel at trial, because his attorneys failed to argue that the state law criteria for admitting Spreigl evidence had not been met, and (5) he was deprived of his constitutional right to effective assistance of counsel on direct appeal, because his attorney did not raise the mistake allegedly made by his trial counsel.[9]

---

[9] There are five claims listed here, rather than four as indicated by the petition itself, because the single ineffective assistance of counsel claim set forth at "Ground One" of the petition actually consists of two separate claims – i.e., ineffective assistance of trial counsel, and ineffective assistance of appellate counsel – which must be analyzed and decided separately.

A.  Procedural Default

The first four of the five claims listed above, i.e., all but the claim of ineffective assistance of appellate counsel, were procedurally defaulted.  Those four claims were defaulted because Petitioner failed to raise them on his direct appeal, and the state courts declined to review them in his post-conviction proceedings, based on the state procedural rule that requires criminal defendants to raise all available claims on direct appeal.  In Petitioner's post-conviction proceedings, the Minnesota Court of Appeals refused to address the merits of his prosecutorial misconduct claim, his Spreigl evidence claim, his Confrontation Clause claim, and his ineffective assistance of trial counsel claim.  The State Court found that all of Petitioner's post-conviction claims, except for his claim of ineffective assistance of appellate counsel, were, or could have been, raised and decided on Petitioner's direct appeal.  Those claims were summarily rejected, because it is well-settled under Minnesota state law that "once a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'" Drummond II, 2004 WL 2221573 at *2, quoting State v. Knaffla, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).  See also McCall, 114 F.3d at 757, ("Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief'"), quoting Knaffla, supra.

Petitioner contends that, despite the Court of Appeals ruling in Drummond II, his current constitutional claims were not procedurally defaulted for present purposes, because he fairly presented those claims in his direct appeal.  This argument is based on the last

sentence in Petitioner's pro se supplemental brief to the Minnesota Court of Appeals, (quoted at pp. 4-5, <u>supra</u>), in which he asserted, without any explanation, that his conviction should be set aside on federal constitutional grounds.   However, even if that one conclusory sentence did adequately present Petitioner's current constitutional claims to the Minnesota Court of Appeals, (which is a highly dubious supposition), this Court still would conclude that Petitioner did not fairly present his current constitutional claims on direct appeal, because <u>those claims were not raised in his subsequent petition for further review in the Minnesota Supreme Court</u>.

A state prisoner cannot preserve a federal constitutional claim for later federal habeas corpus review merely by raising the claim in an intermediate state appellate court. If discretionary review is available in a higher state court, i.e., the state's supreme court, then the prisoner must fairly present his federal constitutional claims to that court. <u>Baldwin</u>, 541 U.S. at 30-32.   Furthermore, a state supreme court is not required or expected to review lower court proceedings to see whether any federal constitutional claims were presented below; such claims are preserved for federal habeas review only if they are presented <u>directly</u> to the highest available state court. <u>Id</u>. at 32 ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in this case, that does so").

In this case, if the justices of the Minnesota Supreme Court read only Petitioner's application for further review on direct appeal – which is all they are required or expected to have read – they would have had no reason to suspect that Petitioner was challenging his conviction on any federal constitutional ground.   There is no mention of the Constitution,

14

or any constitutional principle, or any federal constitutional case law, in Petitioner's application for further review in the Minnesota Supreme Court on direct appeal.  Petitioner's counsel submitted a petition for further review to the State Supreme Court, and Petitioner himself submitted his own pro se petition for further review, but no federal constitutional claim was fairly presented in either of those submissions.  (See Docket No. 14.)  Because Petitioner did not fairly present any of his current federal constitutional claims to the Minnesota Supreme Court on his direct appeal, none of those claims was properly preserved for federal habeas corpus review by means of that appeal.  Baldwin, supra.

In sum, the Court concludes that four of Petitioner's five current claims for relief – i.e., all but the ineffective assistance of appellate counsel claim – were procedurally defaulted, because (i) Petitioner failed to present those claims to the Minnesota Supreme Court in his direct appeal, and (ii) the state courts refused to consider those claims on the merits in his subsequent post-conviction proceedings, pursuant to a well-established state procedural rule.  Therefore, those four claims must be summarily rejected on the grounds of procedural default, unless Petitioner has shown cause and prejudice, or proof of his actual innocence, that would excuse his procedural default.

B.  Cause and Prejudice; Actual Innocence

The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard or the actual innocence standard with regard to any of his four procedurally defaulted claims.  In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner.  Coleman, 501 U.S. at 753  ("'cause' under the cause and prejudice test is something external to the petitioner, something that

15

cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original).

The only "cause" Petitioner has cited to excuse his procedural default is that he received ineffective assistance of counsel on his direct appeal, because "his appellate counsel did not argue the Federal Law aspects of his claims." ("Reply To The Answer To Petition For Habeas Corpus Relief," [Docket No. 12], p. 3.) However, ineffective assistance of counsel cannot serve as cause to excuse a procedural default, unless the proffered ineffective assistance argument has been fairly presented to the state courts as an independent challenge to the validity of the conviction at issue. Edwards v. Carpenter, 529 U.S. 446, 452 (2000) ("'a claim of ineffective assistance'... must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default'") (quoting Murray v. Carrier, 477 U.S. at 489). See also Bailey v. Mapes, 358 F.3d 1002, 1004 (8th Cir. 2004) ("[a]lthough constitutionally ineffective assistance can serve as a 'cause' excusing a procedural default, the ineffective assistance claim must be raised in the state postconviction proceedings before it can be relied upon in a federal habeas proceeding").

In this case, Petitioner did raise an ineffective assistance of counsel claim in his post-conviction proceedings, but he did not raise the same argument that he now seeks to use to excuse his procedural default.  In his state post-conviction proceedings, Petitioner contended that his appellate counsel should have argued that his trial attorneys were incompetent, because they were not able to persuade the trial court judge that the Spreigl

16

evidence was inadmissible under Minnesota law.[10]  Petitioner did <u>not</u> argue in the state

courts, as he does here, that his appellate counsel failed to challenge his conviction on

federal constitutional grounds.

> According to the Eighth Circuit Court of Appeals –
>
> "The Supreme Court has stated, and we, naturally, have insisted, that 'a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'... [Citations omitted.]  Further, we require habeas petitioners to present to the state courts '<u>the same specific claims of ineffective assistance</u> made out in the habeas petition.'  <u>Tippitt v. Lockhart</u>, 903 F.2d 552, 554 (8th Cir.), cert. denied, 498 U.S. 922... (1990)."

<u>Wyldes v. Hundley</u>, 69 F.2d 247, 253 (8th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1172 (1996)

(emphasis added).

Here, as in <u>Wyldes</u>, Petitioner "'simply did not argue in state court that counsel was

ineffective in failing to preserve his federal claims.'"  <u>Id</u>. (quoting from the district court's

decision).  The ineffective assistance of counsel argument that Petitioner now advances

as cause to excuse his procedural default was not presented as an independent claim for

relief in his state post-conviction proceedings.  Therefore, Petitioner's ineffective assistance

of appellate counsel argument cannot overcome his procedural default.

Because Petitioner has failed to satisfy the cause component of the cause and

prejudice requirement, it is unnecessary to discuss the prejudice component.  <u>Id</u>. at 254.

<u>See</u> <u>also</u> <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not

shown adequate cause to overcome the procedural bar... we need not consider the issue

of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), <u>cert</u>. <u>denied</u>, 523

---

[10]   <u>See</u> Appellant's brief to the Minnesota Court of Appeals in <u>Drummond II</u>, (submitted at part of Respondent's Appendix, [Docket No. 8]), at p. "Appendix 21."

U.S. 1010 (1998) (same).

The Court further finds that Petitioner does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted.  Successful demonstrations of actual innocence are "rare and limited," because the actual innocence exception is "permitted only for 'truly persuasive demonstrations of actual innocence,' based on reliable new evidence which shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence.'"  Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir.)), cert. denied, 126 S.Ct. 93 (2005) (citations omitted).  To qualify for the actual innocence exception here, Petitioner would have to present some compelling new evidence, which would conclusively establish that the original verdict simply could not be correct.  This he has not done.  Because Petitioner has not presented any clear and convincing proof that, in fact, he did not commit the crime found by the state court jury, his procedurally defaulted claims cannot be entertained under the actual innocence exception.

## IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The Minnesota Court of Appeals decided Petitioner's ineffective assistance of appellate counsel claim on the merits in Drummond II, so that claim is not procedurally defaulted.  That claim must therefore be addressed on the merits here too.

As noted above, Petitioner contends that his appellate counsel should have challenged the adequacy of his trial attorneys' opposition to the Spreigl evidence. Petitioner claims that his trial counsel erred by "(1) allow[ing] the State to mislead the court and jury concerning the fact of the 1997 guilty plea, [i.e., the facts of the prior conviction admitted as Spreigl evidence]; (2)... fail[ing] to argue the Spreigl evidence was not clear

18

and convincing; and (3)... fail[ing] to motion for a mistrial, when Mr. Kloeppel [the victim of both of Petitioner's crimes] testified the police identified the Defendant for him." (Supplemental Habeas Corpus Petition, [Docket No. 1], p. 23.) Petitioner claims, as he did in his state post-conviction action, that he received ineffective assistance of counsel on his direct appeal, because his appellate counsel did not raise these alleged errors by his trial attorneys.

The State Court of Appeals rejected Petitioner's claim of ineffective assistance of appellate counsel, because it was predicated on the erroneous supposition that the <u>Spreigl</u> evidence would have been excluded if his trial counsel had raised the arguments subsequently suggested by Petitioner.   As the State Court pointed out, however, the admissibility of the <u>Spreigl</u> evidence had been thoroughly reviewed in Petitioner's direct appeal.  By upholding the admission of the <u>Spreigl</u> evidence in <u>Drummond I</u>, the Court of Appeals effectively negated Petitioner's contention that his trail attorneys were incompetent, and that in turn negated Petitioner's claim that he had received ineffective assistance of appellate counsel.  As explained by the Minnesota Court of Appeals:

> "[Petitioner's] only claim regarding appellate counsel is the failure to raise a claim of ineffective trial counsel.   Specifically, he claims that appellate counsel should have challenged trial counsel's handling of the admission of the 1997 convictions as <u>Spreigl</u> evidence.  But again, this issue was already addressed in [Petitioner's] direct appeal, and no error was found.  The [state] district court did not, therefore, err by denying [Petitioner's] ineffective-assistance-of-counsel claims without holding an evidentiary hearing."

<u>Drummond II</u>, 2004 WL 2221573 at *3.

Petitioner has made no effort to explain why he believes the State Court's resolution

of his ineffective assistance of appellate counsel claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Nor has he shown that the State Court's decision was "based on an unreasonable determination of the facts in light of the evidence present in the State court proceedings."  28 U.S.C. § 2254(d)(1) and (2).

In any event, this Court is fully satisfied that the State Court of Appeals' decision on Petitioner's ineffective assistance claim is eminently reasonable.  Petitioner's trial counsel cannot be faulted for not raising arguments that the State Court of Appeals found to be without merit.  See Gray v. Bowersox, 281 F.3d 749, 756, n. 3 (8th Cir. 2002) (ineffective assistance claim cannot be based on counsel's alleged failure to raise a meritless argument), cert. denied, 537 U.S. 1115 (2003).  It follows, concomitantly, that Petitioner's appellate counsel cannot be faulted for not attacking trial counsel's failure to assert those arguments.  Thus, the Court concludes that Petitioner's claim that he received ineffective assistance of counsel on his direct appeal must be denied on the merits.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2.  This action be DISMISSED WITH PREJUDICE.

Dated: April 5, 2006                                    s/ Arthur J. Boylan
                                                        ARTHUR J. BOYLAN
                                                        United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which

specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before April 19, 2006.